IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  08-cv-01895-WYD-KMT

JOHN DOWNS;
COMMERCE & INDUSTRY INSURANCE COMPANY, a New York corporation,

    Plaintiffs,

v.

TA OPERATING, LLC, d/b/a TRAVELCENTERS OF AMERICA, LLC, a Delaware corporation; and
TA COUNTRY PRIDE RESTAURANT, d/b/a/ COUNTRY PRIDE RESTAURANT,

    Defendants.

---

## **AMENDED ORDER**

---

I.    INTRODUCTION AND BACKGROUND

Plaintiffs John Downs and Commerce & Industry Insurance Company filed this case against the Defendants, TA Operating LLC d/b/a Travelcenters of America, LLC and TA Country Pride Restaurant d/b/a Country Pride Restaurant because of Plaintiff Downs' alleged slip and fall in Defendants' restaurant.  In the complaint, Plaintiff Downs alleged a premises liability claim under Colo. Rev. Stat. §13-21-115 and Plaintiff Commerce & Industry Insurance Company ("Commerce") alleged a claim for statutory and equitable right of subrogation against the Defendants.

By way of background, a four-day jury trial commenced on Monday, December 13, 2010.  Following its deliberation, the jury, on December 16, 2010, returned a verdict for Plaintiff Downs on his premises liability claim.  Specifically, the jury awarded Plaintiff Downs $50,000 in damages for economic losses excluding any damages for physical

impairment or disfigurement and $50,000 in damages for noneconomic losses or injuries excluding any damages for physical impairment or disfigurement. The jury did not award damages for physical impairment or disfigurement. Finally, the jury found Plaintiff Downs to be 15% comparatively negligent in the accident. Accordingly, the $100,000 award was reduced by 15%, which totaled $85,000.

Prior to the start of the trial, in an order dated December 10, 2010, I determined that "[o]nce the jury returns a verdict on Plaintiff Downs' premises liability claim, if necessary, the Court will rule on Commerce's subrogation claim. Accordingly, the Court will not submit instructions to the jury regarding any issue concerning Commerce's subrogation claim as it may cause confusion of the issues or mislead the jury."[1] (ECF No. 83.)

Consistent with the December 10, 2010 order, at trial, I gave the following instruction to the jury, which reads in relevant part:

> Plaintiff Commerce & Industry was the workers' compensation carrier for Mr. Downs' employer and seeks to recover all of the workers' compensation benefits paid under Illinois workers' compensation laws to or for the benefit of John Downs. This is a claim to be decided by the Court. The jury will not decide this issue.

(ECF No. 88, Jury Instruction No. 1.)

At trial, Commerce presented testimony to the jury as to medical expenses paid by Commerce for the benefit of Plaintiff Downs. The amount and justification for medical payments was provided to the jury by Commerce's workers' compensation adjuster, Marsica. Singleton, after she was qualified as an expert witness in the field of

---

[1] Both Commerce and the Defendants agreed that the subrogation claim was properly tried to the Court, not the jury.

workers' compensation adjusting under Illinois law.[2]  I allowed no other testimony as to Commerce's payments to Plaintiff Downs in connection with his workers' compensation claim to be presented to the jury.  However, outside the presence of the jury, I heard testimony from Ms. Singleton and received exhibits regarding the amounts Commerce paid Plaintiff Downs for permanent partial disability ("PPD") and total temporary disability ("TTD").

Since the jury found the Defendants liable for Plaintiff Downs' slip and fall, I ordered the parties to file briefs with respect to Commerce's subrogation claim—particularly, the amount of damages to be awarded to Commerce.  In the briefing, Commerce urges that the Court has the power to award Commerce damages independent from the jury's damage award to Plaintiff Downs.  On the other hand, Defendants argue that since the jury did not find the Defendants legally liable for Plaintiff Downs' damage claims for physical impairment or disfigurement, it cannot recover any payments it made to Plaintiff Downs for his disability claims.  Therefore, in this Order, I address the applicable legal standards, consider the evidence presented in connection with Commerce's claim, and determine the appropriate award of damages that should be entered in favor of Commerce on its subrogation claim.  After reviewing all of the relevant materials, considering the arguments from both parties, and weighing the evidence, I find that Commerce is entitled to an award of damages in the amount of $30,068.94 for medical costs, $24,367.22 in TTD and $80,000 in PPD plus pre-

---

[2] Plaintiff Downs is a resident and citizen of the state of Illinois.  Commerce is the workers' compensation carrier who was responsible for Plaintiff Downs' medical, wage loss and injury benefits.  It is undisputed that Commerce's claim is based on section 5(b) of the Illinois Workers' Compensation Act and is thus, governed by Illinois law.

judgment interest at the rate of 8.0% and post judgment interest at the statutory rate in connection with its subrogation claim.

II. ANALYSIS

    A. Commerce's Argument

Commerce asserts that under Illinois law, a workers' compensation carrier can either pursue a claim by way of a lien—which is dependent upon the injured party's damages—or by way of independent action. See 820 ILCS 305/5(b) (2004); See also *O'Brien v. The Chicago City Ry. Co.*, 137 N.E. 214, 218 (Ill. 1922). Although a workers' compensation lien and a subrogation claim are similar because they arise out of a work related accident for which a third party is responsible, the claims become procedurally different depending on how they are asserted.

In contrast to the case at hand, a workers' compensation carriers' lien claim is asserted toward the claimant and the claimant must satisfy the lien before he can recover. The injured worker in a lien case must prove the workers' compensation carriers' damages claim because the lien attaches to the plaintiff's claim. Under Illinois law, the workers' compensation lien is to be paid first from the damage award. In other words, the only way a plaintiff will recover any money is to establish the worker's compensation claim as well as any damages he incurred beyond the workers' compensation benefits paid. Compare *Paige v. Hibbard*, 518 N.E.2d 69 (Ill. 1987) with *Ullman v. Wolverine Insurance Company*, 105 N.E.2d 827, 829 (Ill. App. 1969).

On the other hand, here, Commerce's subrogation claim was asserted directly against the third party tortfeasor (the Defendants) and, although derivative of Plaintiff Downs' premises liability claim, it is independent in terms of damages. "Section 5(b)

allows both the employer and the employee an opportunity to reach the true offender while preventing the employee from obtaining a double recovery". *J.L. Simmons C. ex rel. Hartford Insurance Group v. Firestone Tire & Rubber Co.* 483 N.E. 2d 273, 276 (Ill. 1985). Here, Commerce argues that Plaintiff Downs does not have the obligation or need to assert the damages of the workers' compensation carrier. Downs is not responsible for asserting these damages as the workers' compensation carrier, Commerce, is represented by its own legal counsel and has asserted its own claim which can be independently litigated.

In support of its argument that a workers' compensation carrier has the right to pursue its independent claim, Commerce cites *Brandt v. John S. Tilley Ladders Co.*, 495 N.E.2d 1269, 1272-73 (Ill. App. 1986). In *Brandt*, the workers' compensation carrier was permitted to intervene in plaintiff's case even after plaintiff's claim was dismissed by the trial court for failure to comply with discovery. The appellate court determined that the "intervention in the case *sub judice* was not untimely and the circuit court properly allowed Aetna's intervention." *Id.* at 1273. Thus, Commerce argues that the court recognized that the right of the workers' compensation carrier existed without regard to the prosecution of the injured worker's lawsuit.

Commerce also cites *Chubb Group Ins. Co. v. Carrizalez*, 873 N.E.2d 473, 475-76 (Ill. App. 2007) in support of its argument. In *Chubb*, the Appellate Court of Illinois explained that "[s]ection 5(b) of [its] Workers' Compensation Act provides protections to employers that are compelled to pay compensation to employees injured by third-party tortfeasors." *Id.* at 475 (internal quotations and citations omitted). The Illinois Workers' Compensation Act reads in relevant part:

> Where the injury or death for which compensation is payable under this Act was caused under circumstances creating a legal liability for damages on the part of some person other than his employer to pay damages, then legal proceedings may be taken against such other person to recover damages notwithstanding such employer's payment of or liability to pay compensation under this Act.  In such case, however, if the action against such other person is brought by the injured employee * * * or settlement is made with such other person, either with or without suit, then from the amount received by such employee * * * there shall be paid to the employer the amount of compensation paid or to be paid by him to such employee * * *.
>
> * * *
>
> If the injured employee * * * agrees to receive compensation from the employer or accept from the employer any payment on account of such compensation, or to institute proceedings to recover the same, the employer may have or claim a lien upon any award, judgment or fund out of which such employee might be compensated from such third party.
>
> * * * No release or settlement of claim for damages by reason of such injury or death, and no satisfaction of judgment in such proceedings shall be valid without the written consent of both employer and employee or his personal representative, except in the case of employers, such consent is not required where the employer has been fully indemnified or protected by Court order.

820 ILCS 305/5(b).

Thus, the *Chubb* Court noted that section 5(b) provides four remedies for employers to recoup compensation paid to employees caused by third-party tortfeasors:

> (1) a lien against any compensation the employee receives from a third party with or without suit for any workers' compensation benefits paid by the employer; (2) the right to intervene in any suit filed by the employee against the tortfeasor at any stage prior to satisfaction of judgment, so that all orders are made for the employer's protection; (3) the invalidity of a release or settlement of claim for damages entered between the employee and the tortfeasor, without written consent of the employer unless the employer has been fully indemnified or is protected by court order; and (4) the right to bring a suit during the three months prior to the expiration of the statute of limitations if the employee has not filed suit.

*Chubb*, 873 N.E.2d at 852.  "It is clear that the statute provides numerous protections

for the interests of an employer who has made workers' compensation payments." *Id.* The court went on to emphasize that "section 5(b) provides a means for the employer to reach the true tortfeasor" and "the employer, who, in a fault sense, is neutral, comes out even; the third person pays exactly the damages he or she would normally pay . . .; and the employee gets a fuller reimbursement for actual damages sustained than is possible under the compensation system alone." *Id.*

Thus, since Commerce elected to pursue its claim independent of Plaintiff Downs' claim, Commerce's claim is not dependent upon, tied to, or subsumed by Plaintiff Downs' damage claim. Commerce urges the Court to award it the full extent of payments made to Plaintiff Downs because the payments were reasonable, necessary, and related to the work injury. Based on the testimony provided by the expert witness, Ms. Singleton, the Court should award Commerce $30,068.94 for medical costs, $24,367.22 in TTD and $80,000.00 in PPD plus pre and post judgment interest at the rate of 8%. Finally, Commerce asserts that although the jury found Plaintiff Downs' to be 15% at fault for the slip and fall, Commerce is entitled to the full amount of workers' compensation payments because Commerce is not subject to the comparative negligence of Plaintiff Downs. *Kochan v. Arcade Electric Co.*, 512 N.E.2d 1295, 1297-98 (Ill. App. 1987). The *Kochan* Court held that section 5(b) of the Act is clear and unambiguous. "The provision allows the employer to recoup the total amount of compensation that he paid to the employee. Negligence, of either the employer or employee, is simply not a factor." *Id.* at 1297. "Section 5(b) . . . makes it plain that the concept of negligence has nothing to do with an employer's statutory recovery of compensation payments from an employee." *Id.*

B.     Defendants' Argument

Defendants agree that pursuant to my Order, and following the jury verdict, it is the Court's duty to determine any award to which Commerce may be entitled under its statutory subrogation claim.  However, Defendants argue that any award to Commerce must only involve those amounts already award by the jury for Plaintiff Downs' economic or non-economic damages.  Thus, Defendants assert that Commerce is not entitled to recover additional, separate amounts from them for its claims of TTD or PPD.

Defendants maintain that the jury found that Plaintiff Downs had no damages for physical impairment or disfigurement.  The jury only awarded damages for economic loss and damages for non-economic loss.  As a result, the jury determined that Plaintiff Downs did not have any injuries for the categories of damages which Commerce is now seeking from the Court.  Therefore, Commerce cannot recover the amounts it paid Plaintiff Downs for TTD or PPD because the jury did not find Defendants liable for any of the impairment or disfigurement claims Plaintiff Downs asserted at trial.

C.     Plaintiff John Downs' Position

Plaintiff Downs agrees with Commerce that the only amount related to Commerce's claim that was presented to the jury was the medical payment of $30,068.94.  Thus, judgment should enter in favor of Plaintiff Downs in the amount of $54,931.06 plus interest and costs.  (This is the total award of $85,000 reduced by $30,068.94)  Also, judgment should enter in favor of Commerce in the amount of $30,068.94 plus the $24,367.22 paid in TTD and the $80,000 paid in PPD plus interest and costs.

D.     Analysis

Turning to my analysis, I note that I did extensive independent research on this issue and found a dearth of Illinois law (or law from other jurisdictions) addressing a similar set of facts present in this case. However, based on my review of the case law cited by Commerce, the parties' arguments, and the evidence presented to the Court by Commerce during the trial, I find that Commerce should be awarded $30,068.94 for medical costs, $24,367.22 in TTD and $80,000 in PPD plus pre-judgment interest at the legal rate of 8.0% and post-judgment interest at the statutory rate and that the Defendants are obligated to pay such amounts.

It is undisputed that the parties agreed that the Court should determine the appropriate amount of damages to be awarded to Commerce in the event the jury found Defendants liable for Plaintiff Downs' slip and fall. Based on the jury's finding that Defendants are liable for Plaintiff Downs' slip and fall accident, I now turn to Commerce's subrogation claim asserted under section 5(b) under the Illinois Workers' Compensation Act.

As I previously noted, the Illinois Workers' Compensation Act reads in relevant part:

> Where the injury or death for which compensation is payable under this Act was caused under circumstances creating a legal liability for damages on the part of some person other than his employer to pay damages, then legal proceedings may be taken against such other person to recover damages notwithstanding such employer's payment of or liability to pay compensation under this Act.

820 ILCS 305/5(b).

I make the following findings of facts from the evidence presented at trial in connection with Commerce's subrogation claim.

Following the slip and fall, Plaintiff Downs reported his injury to his employer who referred the claim to Commerce. Within 24 hours, Commerce's workers' compensation claim adjuster, Marsica Singleton, began processing Downs' claim. Singleton contacted both Downs and his employer. Singleton obtained information about the injury including witness statements, payroll records and the discharge summary from the hospital. Singleton recommended and authorized medical treatment for Downs. Dr. Dusek, one of Downs' treating physicians, recommended an MRI and subsequent shoulder surgery as a result of Downs' injuries. Due to differing opinions of Downs' physicians, Singleton also authorized an independent medical examination ("IME") of Downs. Based on all of the information available to her and her experience adjusting workers' compensation claims, Singleton authorized shoulder surgery, which revealed a rotator cuff tear in the shoulder. Commerce paid for Downs' medical care in the amount of $30,068.94.

As to Commerce's payments for TTD and PPD, Singleton presented credible testimony to the Court outside the presence of the jury. Following the surgery, Singleton authorized a second IME of Downs in order to determine his maximum medical improvement. Singleton also ordered surveillance of Downs in order to determine if he was exceeding his sitting or lifting restrictions. Then, as part of the settlement negotiations of Downs' claim with his workers' compensation attorney, Singleton explained that Commerce's potential exposure in connection with this claim was approximately $200,000. Thus, over the course of a year, Singleton and Downs' attorney reached a settlement of $80,000 in PPD and $24,367.22 in TTD. Singleton explained in detail how the amounts were reached and subsequently paid to Downs by Commerce.

Here, given the previously cited Illinois law and the relevant facts, I find that Commerce filed an independent subrogation claim against the Defendants to recoup benefits it paid out to Plaintiff Downs, the injured worker, in accordance with section 5(b) of the Illinois Workers' Compensation Act. Based on the testimony by Singleton, I further find that the amounts paid in benefits to Plaintiff Downs were reasonable, necessary and related to Downs' on-the-job injury.

I am not persuaded by Defendants' argument that Commerce should not be compensated for the benefits it paid Downs for TTD and PPD because the jury did not award Downs damages for physical impairment or disfigurement. The jury was instructed not to consider Commerce's claim and did not hear Commerce's evidence in connection with its TTD and PPD payments pursuant to my order, which was agreed to by the parties. In other words, Commerce's total damage claim was not considered by the jury when it awarded Downs $100,000.00 in damages. Thus, it would be unfair to Commerce and contrary to the intent of the Illinois Workers' Compensation Act, which provides a means for the employer to reach the true tortfeasor, to limit Commerce's damages to the amounts awarded by the jury when the jury did not hear the totality of the evidence.

Finally, as to Commerce's argument that its award should not be reduced to reflect Plaintiff Downs' negligence, I agree. The case law supports Commerce's position, and Defendants fail to cite any authority to the contrary. See *Kochan v. Arcade Electric Co.*, 512 N.E.2d at 1297-98 (holding that section 5(b) makes it plain that the concept of negligence has nothing to do with an employer's statutory recovery of compensation payments from an employee).

Accordingly, I find that judgment shall be entered in favor of Commerce and against the Defendants in the amount of $30,068.94 for medical costs, $24,367.22 in TTD and $80,000.00 in PPD plus pre-judgment interest at the legal rate of 8.0% and post-judgment interest at the statutory rate.  I also find that judgment shall be entered in favor of Plaintiff Downs and against the Defendants in the amount of $54,931.06, which is consistent with the jury's verdict ($85,000.00) less the amount of medical costs awarded to Commerce ($30,068.94), which totals $54,931.06 plus pre-judgment interest at the legal rate of 8.0% and post-judgment interest at the statutory rate.

III.    CONCLUSION

Based on the foregoing,  judgment shall be entered in favor of Commerce and against the Defendants for the subrogation claim in the amount of $30,068.94 for medical costs, $24,367.22 in TTD and $80,000.00 in PPD plus pre-judgment interest at the legal rate of 8.0% and post-judgment interest at the statutory rate.  I also find that judgment shall be entered in favor of Plaintiff Downs and against the Defendants for the premises liability claim in the amount of $54,931.06, which is consistent with the jury's verdict ($85,000.00) less the amount of medical costs awarded to Commerce ($30,068.94), which totals $54,931.06 plus pre-judgment interest at the legal rate of 8% and post-judgment interest at the statutory rate.  Also, pursuant to D.C.COLO.LCivR 54.1, costs are awarded in favor of both Plaintiff Downs and Plaintiff Commerce.

Dated: February 16, 2011.

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge